**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| DR. WILHELMINA TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 8:24-cv-01561-LKG |
| v. ) | |
| ) | Dated: March 5, 2026 |
| GIANT OF MARYLAND LLC, *et al*., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION**

## I. INTRODUCTION

In this employment discrimination case, the Plaintiff, Dr. Wilhelmina Taylor,  brings discrimination and retaliation claims against the Defendants, Cheryl Travers ("Ms. Travers") and Giant of Maryland LLC ("Giant"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII"); 42 U.S.C. § 1981(a) ("Section 1981"); the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1) ("ADEA"); the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(b)(5)(A), *et seq*. ("ADA"); the Equal Pay Act, 29 U.S. Code § 206(d) ("EPA"); the Maryland Equal Pay for Equal Work Act, Md. Code, Lab. & Empl. § 3-304(b)(1)(i) ("MFEPA"); and the Maryland Equal Pay for Equal Work Act, Md. Code., Lab. & Empl. § 3-304(b)(1)(i) ("MEPEWA").  *See generally* ECF No. 31.  The Defendants have filed a renewed motion to dismiss the amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6).  ECF No. 34.  The motion is fully briefed.  *See* ECF Nos. 34, 34-1, 39, 39-1 and 42.  No hearing is necessary to resolve the motion.  *See* L.R. 105.6 (D. Md. 2025).  For the reasons that follow, the Court: (1) **GRANTS-in-PART** and **DENIES-in-PART** the Defendants' motion to dismiss (ECF No. 34); (2) **DISMISSES** the Title VII, ADEA, ADA and MFEPA claims against Defendant Travers; (3) **DISMISSES** Counts V, VI, VII, VIII and IX of the amended complaint; and (4) **GRANTS** the Plaintiff **LEAVE** to amend the complaint to add comparators to support her Title VII and Section 1981 race/color discrimination claims in Counts I and IV of the amended complaint.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.    Factual Background

In this employment discrimination case, the Plaintiff brings discrimination and retaliation claims against the Defendants, pursuant to Title VII, Section 1981, the ADEA, the ADA, the MFEPA, Section 1981, the EPA and MEPEWA.  *See generally* ECF No. 31.  Specifically, the Plaintiff asserts the following claims in the amended complaint: (1) Title VII-race discrimination (Count I); (2) Title VII-hostile work environment (Count II); (3) Title VII-retaliation (Count III); (4) Section 1981-race discrimination (Count IV); (5) Title VII-sex discrimination (Count V); (6) ADEA violation (Count VI); (7) ADA violation (Count VII); (8) EPA and MEPEWA (Count VIII); and (9) MFEPA violation (Count IX).  ECF No. 31 at 13–31.  As relief, the Plaintiff seeks, among other things, a declaratory judgment, injunctive relief and to recover monetary damages, attorneys' fees and costs from the Defendants.  *Id*. at Prayer for Relief.

<u>The Parties</u>

The Plaintiff, Dr. Wilhelmina Taylor, identifies as an African American (Black) female and she is employed as a Pharmacy Manager with Defendant Giant.  ECF No. 31 at ¶¶ 18 and 24.

Defendant Giant is a supermarket with in-store pharmacy locations that operates in the State of Maryland.  *Id*. at ¶ 20.

Defendant Ms. Travers is the Plaintiff's supervisor and she is Caucasian (White).  *Id.* at ¶ 25.

<u>The Plaintiff's Employment History</u>

The Plaintiff began her employment with Giant in July 2000, and she is currently employed by Giant as a Pharmacy Manager.  ECF No. 31 at ¶¶ 18 and 24.  In the amended complaint, the Plaintiff alleges that she has been targeted by her supervisor, Ms. Travers, who is a District Pharmacy Manager with Giant and Caucasian, "[s]ince 2017."  *Id.* at ¶ 35.

Specifically, the Plaintiff alleges that, on or about July 2017, Ms. Travers informed the Plaintiff that she and her work site would be given an earmarked performance score of two out of

---

[1] The facts recited in this memorandum opinion are taken from the amended complaint, the Defendants' renewed motion to dismiss, and the memorandum in support thereof, and the Plaintiff's response in opposition thereto.  ECF Nos. 31, 34, 34-1, 39 and 39-1.

five possible performance points.  *Id.* at ¶ 26.  The Plaintiff also allege that these low evaluation scores were given because of her race, rather than actual performance metrics.  *Id*.

On or about July 24, 2019, the Plaintiff was unexpectedly transferred from the Giant store located at 10480 Campus Way South, Largo, Maryland to a Giant store located at 1280 East-West Highway, Silver Spring, Maryland.  *Id*. at ¶ 27.  The Plaintiff alleges that Ms. Travers proceeded with the transfer in retaliation for the Plaintiff confronting her about the discriminatory practices at Giant.  *Id*.

On or about November 25, 2019, the Plaintiff was issued a Final Letter of Reprimand by Ms. Travers during a performance review meeting.  *Id*. at ¶ 28. The Plaintiff alleges that the Letter was problematic, because: (1) [she] never received any verbal (or written) warnings or an initial reprimand pursuant to Defendants policy standards, and (2) [she] was held responsible for another co-worker's action strictly because of her race/color (African American/Black).  *Id*. at ¶ 29.  The Plaintiff also alleges that, on December 7, 2019, she requested and was denied reimbursement for immunization certification training that was required before she could give immunization clinics.  *Id*. at ¶ 31.

In addition, the Plaintiff alleges that she received a phone call from Ms. Travers during which Ms. Travers berated and verbally abused her, on April 27, 2020.  *Id*. at ¶ 32.  The Plaintiff further alleges that Ms. Travers directed her to clean up the pharmacy and Travers told Plaintiff that the "needed a lady's touch" on May 11, 2020.  *Id*. at ¶ 33.  The Plaintiff contends that Ms. Travers harsh treatment of her was motivated by her race, "and the hostile work environment Travers maintains to retaliate against the Plaintiff for her discrimination claims." *Id*. at ¶ 32.

The Plaintiff alleges that she continued to experience discrimination and retaliation at work during 2021–2023.  In this regard, the Plaintiff alleges that that Ms. Travers showed up unannounced at her worksite to inspect, investigate, and meet with the Plaintiff after her work shift on or about October 18, 2021.  *Id*. at ¶ 37.  The Plaintiff also alleges that, upon her return from Family Medical Leave Act ("FMLA") leave in December 2022, Ms. Travers and Giant's Vice President of Human Resources, Valree Stell, came to her workplace for an unscheduled and unannounced meeting, during which the Plaintiff felt "threatened with a demotion by [Ms.]Travers." *Id*. at  ¶ 39.

The Plaintiff further alleges that the Defendants denied her request for mileage reimbursement for the assignment to a new Giant store, despite the fact that she is aware of "10

other non-Black pharmacists employed by Giant who regularly receive mileage reimbursements in similar conditions." *Id*. at ¶ 40.  In addition, the Plaintiff alleges that she asked the Defendants for a raise, due to the increased demands of her new assignment, but she was denied any wage increase, mileage reimbursement, performance bonuses, or reasonable accommodation.  *Id*. at ¶ 42.  Lastly, the Plaintiff also alleges that she was required by Defendants to work, during her scheduled day off on February 11, 2023, resulting in the Plaintiff working 13 days straight without a day off, in denial of her requested reasonable accommodations.  *Id*. at ¶ 43.  And so, the Plaintiff contends that Ms. Travers has targeted her since 2017, and up to the filing of this civil action, directly impacting her earnings, promotions, bonuses, top-tier stock options, and her ability to earn wage increases.  *Id*. at ¶¶ 35 and 46.

The Plaintiff's Charge Of Discrimination

The Plaintiff filed a Charge of Discrimination on or about October 20, 2020, with the Equal Employment Opportunity Commission ("EEOC").  ECF No. 34-2 at 1.  In the Charge, the Plaintiff names Giant as the Respondent and she asserts claims of discrimination based on race, color, age and retaliation.  *Id.*  The Plaintiff filed an Amended Charge of Discrimination on or about January 20, 2021.  ECF No. 1-5 at 1.  The Amended Charge names Giant as the Respondent and asserts claims of discrimination based on race and color, and retaliation.  *Id.*  On March 1, 2024, the EEOC issued its Determination and Notice of Rights.   ECF No. 1-3 at 1.

The Plaintiff's Discrimination Claims

In the amended complaint, the Plaintiff asserts claims against the Defendants for violations of Title VII, Section 1981, the ADEA, the ADA, the EPA, the MEPEWA and the MFEPA.  ECF No. 31 at 13–31.  Specifically, in Count I of the amended complaint, the Plaintiff alleges that the Defendants discriminated against her upon the basis of race, in violation of Title VII, by taking adverse employment actions against her and treating her differently and less favorably than similarly situate employees who are not Black.  *Id*. at 13–15.  In Count II of the amended complaint, the Plaintiff alleges that the Defendants' actions and conduct created a hostile work environment.  *Id*. at 16–17.

In Count III of the amended complaint, the Plaintiff alleges that the Defendants violated Title VII, by retaliating against her for filing the discrimination complaints that she made against Ms. Travers.  *Id*. at 18–20.  In Count IV of the amended complaint, the Plaintiff alleges that the Defendants violated Section 1981, by giving her low performance ratings that were based on her

4

race and treating her differently due to her race. *Id*. at 20–22.

In Count V of the amended complaint, the Plaintiff alleges that the Defendants discriminated against her upon the basis of her sex, by committing the various adverse employment actions. *Id*. at 22–23. The Plaintiff also alleges in Count VI of the amended complaint that the Defendants violated the ADEA, by subjecting her to the various adverse employment actions due to her age. *Id*. at 24–26.

In Count VII of the amended complaint, the Plaintiff alleges that the Defendants violated the ADA, by denying her the reasonable accommodation prescribed by a medical professional. *Id*. at 26–29. In Count VIII of the amended complaint, the Plaintiff alleges that the Defendants violated the EPA and MEPEWA, by, among other things, denying her the same higher salaries, overtime pay, bonuses, fuel allowances and reimbursement for travel as her male counterparts. *Id*. at 29–32.

Lastly, in Count IX of the amended complaint, the Plaintiff alleges that the Defendants violated the MFEPA, by subjecting her to harassment or offensive conduct based upon her race, sex and age. *Id*. at 32–33. And so, the Plaintiff seeks, among other things, a declaratory judgment, injunctive relief, monetary damages, attorneys' fees and costs from the Defendants. *Id*. at Prayer for Relief.

**B.    Procedural Background**

The Plaintiff commenced this matter on May 30, 2024. ECF No. 1. At the time, the Plaintiff was proceeding in this matter without the assistance of counsel. *See id.*

On September 13, 2024, the Defendants filed a motion to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(1), (b)(5) and (b)(6). ECF No. 13. On October 2, 2024, Plaintiff's Counsel entered notices of appearance on behalf of the Plaintiff. ECF Nos. 16–18.

On January 22, 2025, the Plaintiff, with the aid of counsel, filed a motion for leave to amend the complaint, which the Court granted on April 8, 2025. ECF Nos 23 and 30. The Plaintiff filed an amended complaint on April 8, 2025. ECF No. 31.

On May 21, 2025, the Defendants filed a renewed motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and a memorandum in support thereof. ECF Nos. 34 and 34-1. On July 11, 2025, the Plaintiff filed a response in opposition to the Defendants' motion. ECF No. 39. On August 6, 2025, the Defendants filed a reply brief. ECF No. 42.

The Defendants' motion to dismiss having been fully briefed, the Court resolves the pending motion.

## III.  LEGAL STANDARDS

### A.    Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.  *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted).  But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement."  *Nemet Chevrolet*, 591 F.3d at 255.

### B.    Fed. R. Civ. P. 4(m)

Fed. R. Civ. P. 4(m) provides that:

> If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time.

Fed. R. Civ. P. 4(m).

### C.    Title VII

Title VII prohibits employment discrimination based on race, color, religion, sex and national origin.  *See* 42 U.S.C. § 2000e.[2]  Title VII requires that a plaintiff file a charge of

---

[2] The MFEPA "is the state law analogue of Title VII." *Alexander v. Marriott Int'l, Inc.*, No. 09-2402, 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011).  Under the MFEPA, "a complainant may bring a civil action . . . alleging an unlawful employment practice, if: (1) the complainant initially filed a timely administrative charge . . .; (2) at least 180 days have elapsed since the filing . . .; and (3) the civil action is filed within two years after the alleged unlawful employment practice occurred."  Md. Code State Gov't. § 20-1013(a).  And so, the MFEPA requires that a plaintiff file an employment discrimination action within two years of an alleged unlawful employment practice, provided that plaintiff's administrative charge was timely under federal or local law.  *See id.*  When a plaintiff has not asserted a distinction between a federal and Maryland discrimination claims, the Court may apply the same standards to the

6

discrimination with the EEOC before filing suit in this Court. 42 U.S.C. § 2000e-5(f)(1) (permitting civil suit by the "person claiming to be aggrieved" after filing of a charge with the EEOC and upon receipt of a right-to-sue letter); *see also, e.g.*, *Puryear v. Cnty. of Roanoke*, 214 F.3d 514, 518 (4th Cir. 2000) ("[T]he aggrieved person may initiate a civil action based on the Title VII claims made in her EEOC charge only after receipt of a right-to-sue letter."); *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005). This "exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles*, 429 F.3d at 491.

Title VII also requires that an aggrieved party file a charge with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1). If a plaintiff "fails to file an administrative charge with the EEOC within one hundred eighty . . . days after an alleged discriminatory act occurs (or three hundred . . . days if the aggrieved person presented the claim to a state deferral agency), then the EEOC charge is not considered timely filed." *Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 417 (4th Cir. 2014) (citing 42 U.S.C. § 2000e-5(e)(1)).

The United States Court of Appeals for the Fourth Circuit has recognized that the exhaustion requirement under Title VII "is not simply a formality to be rushed through so that an individual can quickly file [a] subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). Rather, together with the agency investigation and settlement process it initiates, this requirement "'reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes.'" *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)). The United States Supreme Court has also held that Title VII's charge-filing requirement "is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts." *Fort Bend Cnty, Tex. v. Davis*, 139 S. Ct. 1843, 1851 (2019). And so, the Court cannot consider matters that were not properly raised during the EEOC process, even when a plaintiff has filed a timely claim with the EEOC. *See, e.g.*, *Jones v. Calvert Grp.*, 551 F.3d 297, 300 (4th Cir. 2009) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) ("'Only

---

analysis of the state and federal discrimination claims. *See Blakes v. City of Hyattsville*, 909 F. Supp. 2d 431, 444 (D. Md. 2012).

those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.'"); *Mile*s, 429 F.3d at 491.[3]

There are two methods for proving intentional discrimination in employment under Title VII: (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the three-step, burden-shifting scheme set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). For the first method, an employee may utilize "ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 606-07 (4th Cir. 1999) (quoting *Tuck v. Henkel Corp.*, 973 F.2d 371, 374 (4th Cir. 1992)). If direct or indirect evidence of intentional discrimination is lacking, a plaintiff may proceed under *McDonnell Douglas*. *See Tuck*, 973 F.2d at 374. Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802. Specifically relevant to this employment discrimination dispute, a plaintiff may establish a *prima facie* case of discrimination based upon her race/color by showing that: (1) she is a member of a class protected by Title VII; (2) her job performance was satisfactory; (3) she was subjected to an adverse employment action; and (4) similarly situated employees outside her class received more favorable treatment. *See Coleman v. Md. Ct. of Appeals*, 626 F.3d. 187, 190 (4th Cir. 2010). An adverse employment action is one that affects employment or alters the conditions of the workplace. *Burlington N. and Santa Fe Ry., Co. v. White*, 548 U.S. 53, 62 (2006).

If a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse employment action alleged. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (citing *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). If the defendant succeeds in doing so, that showing will rebut the presumption of discrimination raised

---

[3] To determine whether a plaintiff has "properly alleged [a claim] before the EEOC" in a manner satisfying the exhaustion requirement, courts "may look only to the charge filed with that agency." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013); *see also Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962–63 (4th Cir. 1996) ("The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint."); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005) ("This charge frames the scope of future litigation.").

by the plaintiff's prima facie case. *See Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000) (citing *Burdine*, 450 U.S. at 255 n.10). The plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253. And so, "[t]he plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (citing *Burdine*, 450 U.S. at 253).

The Plaintiff also asserts a hostile work environment claim in this case. The United States Supreme Court has established that when determining if "an actionable hostile work environment claim exists," courts must look at "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)). And so, The Fourth Circuit has held that to sustain a hostile work environment claim, "a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's sex and/or race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011); *see also Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 117 (4th Cir. 2021) (same).

Lastly, the Title VII's anti-retaliation provision makes it unlawful "for an employer to discriminate against [an] . . . employee[] . . . because he has opposed any practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation . . . ." 42 U.S.C. § 2000e-3. And so, the Fourth Circuit has held that a Title VII plaintiff "may prove a Title VII retaliation claim either through direct evidence of retaliatory animus or *via* the application of the *McDonnell Douglas* burden-shifting framework." *Roberts*, 998 F.3d at 122 (citation omitted). To that end, a Title VII plaintiff may prevail under the burden-shifting framework by showing that he: (1) "engaged in protected activity"; (2) "his employer took an adverse action against him"; and (3) that "a causal relationship exist[s]" between plaintiff's protected activity and the employer's adverse action. *See id*.

With regards to the showing of an adverse action, the Supreme Court has also held that a Title VII plaintiff "must show that a reasonable employee would have found the challenged

action materially adverse . . . which . . . means it . . . might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 68; *see also Laurent-Workman v. Wormuth*, 54 F.4th 201, 213 (4th Cir. 2022) (explaining that the Supreme Court widened the scope of conduct that can constitutes an adverse action by an employer from solely conduct that affects an employee's "compensation, terms, conditions, or privileges of employment"). If a Title VII plaintiff establishes a *prima facie* case of retaliation, "the burden shifts to the employer to show that it took adverse action for a legitimate non-retaliatory reason." *Roberts*, 998 F.3d at 122 (citation omitted). And so, if the employer provides a legitimate non-retaliatory reason, "the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating the employer's purported non-retaliatory reasons were pretext for discrimination." *Id.*

### D.    Section 1981

Section 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). To state a cause of action for a Section 1981 violation, a plaintiff must show "both that the defendant intended to discriminate [against the plaintiff] on the basis of race, and that the discrimination interfered with a contractual interest." *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006); *see, e.g.*, *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).

### E.    The ADEA

The ADEA prohibits an employer from discharging any individual, or otherwise discriminating against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. § 623(a)(1). To establish a *prima facie* case of age discrimination under the ADEA, plaintiff must prove that she: (1) was protected by the ADEA; (2) suffered an adverse employment action; (3) was performing her job at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) was replaced by a substantially younger worker. *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315 (4th Cir. 1993). Similar to claims brought under Title VII, a plaintiff may proceed under the *McDonnell Douglas* framework to establish a *prima facie* case of age discrimination under the ADEA. *See Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006) (en banc). Under Title VII and the ADEA, a plaintiff must file a charge with the EEOC before filing suit in federal court. 42 U.S.C. § 2000e–5(f)(1) (Title VII); 29 U.S.C. § 626(d) (ADEA).

### F.  The ADA

The ADA requires that employers to provide their disabled employees with reasonable accommodations that enable them to fulfill the essential duties of their positions.  42 U.S.C. § 12112(b)(5)(A); *see also Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 378 (4th Cir. 2022). To bring a claim under the ADA, a plaintiff must allege facts to show: (1) she is disabled under the ADA; (2) she is otherwise qualified to perform essential functions for the position with or without a reasonable accommodation; (3) she was subject to an adverse employment action; and (4) her employer is subject to the ADA.  *Cowgill*, 41 F.4th at 378.

### G.    The EPA And The MEPEWA

Lastly, the EPA prohibits gender-based discrimination by employers resulting in unequal pay for equal work.  *EEOC v. Maryland Ins. Admin.*, 879 F.3d 114, 120 (4th Cir. 2018).  "To prove a violation of the EPA, a plaintiff must make a prima facie showing of three elements: (1) the defendant-employer paid different wages to an employee of the opposite sex (2) for equal work on jobs requiring equal skill, effort, and responsibility, which jobs (3) all are performed under similar working conditions." *McDowell v. iCallidus, Inc.*, No. 22-3172, 2024 WL 2816054, at *4 (D. Md. May 30, 2024) (internal citation omitted).[6]  "Generally, this comparison must be made factor by factor with a specific male comparator." *Id.*  The EPA and MEPEWA are analyzed using the same framework.  *Schrof v. Clean Earth, Inc.,*  2023 WL 3763984, at *4 (D .Md. June 1, 2023); *see also* Md. Code., Lab. & Empl. § 3-304(b)(1)(i).  This Court has held that,  "even at the Rule 12(b)(6) stage, [a] plaintiff must plausibly allege facts sufficient to show that the skills, effort, and responsibilities required of Plaintiff and [the comparator positions] are substantially equal." *Levere v. Signature Properties, LLC*, No. 21-1929, 2022 WL 2159837, at *17 (D. Md. June 14, 2022) (internal citations omitted).

### IV.   LEGAL ANALYSIS

The Defendants have moved to dismiss this employment discrimination matter for several reasons.  First, the Defendants argue that the Court should dismiss all claims brought against Ms. Travers, because: (1) the Plaintiff failed to properly serve Ms. Travers with the complaint and summons, as required under Fed. R. Civ. P. 4(m); (2) Ms. Travers cannot be held individually liable under Title VII, the ADA, the ADEA and the MFEPA; and (3) the Plaintiff failed to administratively exhaust her claims against Ms. Travers.  ECF No. 34-1 at 9–11.  Second, the

11

Defendants argue that the Court should also dismiss the remaining claims in this case, because: (1) the Plaintiff failed to administratively exhaust her sex, disability and age discrimination claims; (2) the Plaintiff fails to state an age discrimination claim in the amended complaint; (3) the Plaintiff's Title VII, ADEA and ADA claims based on events that occurred before December 25, 2019, are untimely; (4) the Plaintiff fails to state plausible Title VII race/color discrimination and Section 1981 claims, because the amended complaint lacks sufficient facts to show an adverse action or to show an inference of racial discrimination; (5) the Plaintiff fails to state a hostile work environment claim, because the amended complaint lacks facts to show that the Defendants engaged in severe and pervasive conduct; (6) the Plaintiff fails to state a retaliation claim, because the amended complaint lacks facts to show a materially adverse employment action, causation, or a causal connection between the Plaintiff's protected activity and the alleged material adverse employment actions; (7) the Plaintiff fails to state claim under the EPA and the MEPEWA; and (8) the Plaintiff may only recover for any work-related injuries under the Maryland Workers' Compensation Act ("WCA"). *Id*. at 11–29.

Lastly, the Defendants argue that the Court should deny the Plaintiff leave to further amend the amended complaint, because any amendment would be futile. *Id*. at 29–30. And so, the Defendants request that the Court dismiss the amended complaint. *Id*. at 30.

In her response in opposition to the Defendants motion, the Plaintiff concedes that Ms. Travers may not be subject to individual liability under Title VII, the ADEA, the ADA and the MFEPA. ECF No. 39-1 at 14–15. But, the Plaintiff counters that the Court should not dismiss her claims against Ms. Travers, because: (1) she can show good cause for any deficiencies in the service process for Ms. Travers and she has administratively exhausted the claims against Ms. Travers (*Id*. at 8-14); (2) she has administratively exhausted her sex, disability and age discrimination claims; (3) her Title VII and MFEPA claims before December 25, 2019, are timely under the continuing violation doctrine; (4) she states plausible Title VII race/color discrimination claims in the amended complaint; (5) she states a plausible hostile work environment claim in the amended complaint; (6) she states a plausible retaliation claim in the amended complaint; (7) she states plausible claims under the Equal Pay Act and Maryland Equal Pay for Equal Work Act in the amended complaint; (8) she states a plausible Section 1981 claim in the amended complaint; and (9) she does not assert a claim under the WCA in the amended complaint. *Id*. at 16–46. And so, the Plaintiff requests that the Court deny the Defendants'

motion. *Id*. at 49.  In the alternative, the Plaintiff seeks leave to further amend the amended complaint. *Id*. at 47–49.

For the reasons that follow, the Plaintiff's Title VII, ADEA, ADA and MFEPA discrimination claims against Ms. Travers fail as a matter of law, because there can be no individual liability under those statutes.  The undisputed facts in this case also make clear that the Plaintiff has not administratively exhausted her sex, disability and discrimination claims against the Defendants.

A careful reading of the amended complaint also makes clear that the Plaintiffs Title VII, ADA, ADEA and MFEPA claims, based on events that occurred before December 25, 2019, are untimely.  In addition, the Defendants persuasively argue that the Plaintiff's Title VII race/color discrimination and Section 1981 claims are deficient, because the Plaintiff fails to identify a comparator in the amended complaint to support these claims.  The Court will, however, grant the Plaintiff leave to cure this deficiency before dismissing these claims.

A careful reading of the amended complaint also shows that the Plaintiff alleges sufficient factual allegations that, taken as true, state plausible Title VII hostile work environment and retaliation claims.  Lastly, the amended complaint makes clear that the Plaintiff fails to state a claim under the Equal Pay Act and the Maryland Equal Pay for Equal Work Act.  And so, the Court: (1) GRANTS-in-PART and DENIES-in-PART the Defendants' motion to dismiss (ECF No. 49); (2) DISMISSES the Title VII, ADEA, ADA and MFEPA claims brought against Defendant Ms. Travers; (3) DISMISSES Counts V, VI, VII, VIII and IX of the amended complaint; and (4) GRANTS the Plaintiff LEAVE to amend the complaint to add comparators to support her race/color discrimination claims in Counts I and IV of the amended complaint.

**A.    The Court Dismisses Certain Claims Against Defendant Travers**

The Defendants seek to dismiss all claims brought against Ms. Travers in this case, upon the grounds that: (1) the Plaintiff failed to properly serve her with the complaint and summons, as required under Fed. R. Civ. P. 4(m); (2) Ms. Travers cannot be held individually liable under Title VII, the ADA, the ADEA and the MFEPA; and (3) the Plaintiff failed to administratively exhaust her claims against Ms. Travers.  ECF No. 34-1 at 9–11.  As an initial matter, the Court declines to dismiss the Plaintiff's claims against Defendant Tavers, pursuant to Rules 4(m) and 12(b)(5), because the litigation history for this case shows that Ms. Travers has adequate notice of the discrimination claims in this case.  Rule 4(m) provides that:

13

> If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time.

Fed. R. Civ. P. 4(m).  In this case, it is undisputed that the Plaintiff did not meet the deadline to properly serve Ms. Travers with the summons and complaint.  ECF Nos. 34-1at 9–10; 39-1 at 8–11.  But, the litigation history for this case also makes clear that counsel for Ms. Travers and Giant entered an appearance on behalf of these Defendants on July 22, 2024.  ECF No 5.  Given this, the Court is satisfied that Ms. Travers and her counsel had actual notice of the Plaintiff's complaint, and the claims set forth therein, as of July 22, 2024.  *See Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir.1984) ("When the process gives the defendant actual notice of the pendency of the action, the rules, in general are entitled to a liberal construction.").  And so, the Court will not dismiss the claims against Ms. Travers pursuant Fed R. Civ. P. 4(m) and 12(b)(5).

But a careful reading of the amended complaint makes clear that the Court must dismiss the Plaintiff's Title VII, ADA, ADEA, and MFEPA claims against Ms. Travers, because Ms. Travers is not subject to individual liability under these statutes.  As the Plaintiff acknowledges, an individual cannot be held liable under Title VII, the ADA, the ADEA, and the MFEPA.  *See Knickman v. Prince George's Cnty.*, 187 F. Supp. 2d 559, 565 (D. Md. 2002) ("[N]o cause of action under Title VII exists against supervisors in their individual capacities.").  And so, the Court DISMISSES Counts I, II, III, V, VI, VII and IX of the amended complaint as to Defendant Travers.[4]

### B.    The Plaintiff Has Not Exhausted Her Sex, Disability And Age Discrimination Claims

Turning to the Plaintiff's remaining discrimination claims against the Defendants, the amended complaint and the undisputed facts in this case show that the Plaintiff did not administratively exhaust her age, disability and sex discrimination claims before commencing this litigation. Title VII requires that a plaintiff file a charge of discrimination with the EEOC before filing suit in this Court. 42 U.S.C. § 2000e-5(f)(1) (permitting civil suit by the "person

---

[4] Because the Court will dismiss the Plaintiff's Title VII claims against Ms. Travers due to a lack of individual liability, the Court does not address whether the Plaintiff administratively exhausted these claims as to Ms. Travers.

claiming to be aggrieved" after filing of a charge with the EEOC and upon receipt of a right-to-sue letter. This "exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles*, 429 F.3d at 491.

The Fourth Circuit has recognized that the exhaustion requirement under Title VII "is not simply a formality to be rushed through so that an individual can quickly file [a] subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). Rather, together with the agency investigation and settlement process it initiates, this requirement "'reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes.'" *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)). And so, this Court cannot consider matters that were not properly raised during the EEOC process, even when a plaintiff has filed a timely claim with the EEOC. *See, e.g.*, *Jones v. Calvert Grp.*, 551 F.3d 297, 300 (4th Cir. 2009) (quoting *Evans v. Techs. Applications & Serv. Co*., 80 F.3d 954, 963 (4th Cir. 1996); *Mile*s, 429 F.3d at 491.

In this case, it is undisputed that the Plaintiff's original Charge of Discrimination before the EEOC asserts claims for race, color and age discrimination and retaliation. ECF No. 1-4 at 1 and 6. It is also undisputed that the Plaintiff's Amended Charge of Discrimination only asserts claims for race and color discrimination and retaliation. ECF No. 1-5 at 2. As the Plaintiff acknowledges, "the EEOC charge did not expressly reference sex discrimination . . . ." ECF No. 39-1 at 17. Nor did either of the Plaintiff's Charges assert claims for disability discrimination. *Id*.

The Court also agrees with the Defendants that the Plaintiff also abandoned her age discrimination claim, when she failed to raise this claim in the Amended Charge. Given this, the Plaintiff did not administratively exhaust her age, disability and sex discrimination claims in this case. *Id*.[5] And so, the Court DISMISSES these claims as set forth in Counts V, VI and VII of the amended complaint.

---

[5] A review of the Plaintiff's charges of discrimination also shows that the Plaintiff did not raise a medical condition, or  allege a disability, to put the EEOC on notice that it should investigate such claims. ECF Nos.1-4 and 1-5. The Plaintiff also has not shown that her sex and disability claims "reasonably relate" to the race and color discrimination and retaliation claims asserted in her Amended Charge of Discrimination. ECF Nos. 31 and 39-1.

15

### C.    The Plaintiff's Claims Before December 25, 2019 Are Untimely

The Court also agrees with the Defendants that the Plaintiff's remaining Title VII discrimination claims, which are based on conduct that occurred before December 25, 2019, are untimely.  If a plaintiff "fails to file an administrative charge with the EEOC within one hundred eighty . . . days after an alleged discriminatory act occurs, or three hundred . . . days if the aggrieved person presented the claim to a state deferral agency, then the EEOC charge is not considered timely filed."  *Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 417 (4th Cir. 2014) (citing 42 U.S.C. § 2000e-5(e)(1)).  Here, the Plaintiff filed her original Charge of Discrimination with the EEOC on October 20, 2020.  ECF No. 34-2 at 2.  And so, the Plaintiff may only rely upon alleged discriminatory conduct that occurred within 300 days of that date— December 25, 2019—to support her Title VII discrimination claims.  But the Plaintiff relies upon several instances of alleged discriminatory conduct that occurred before December 25, 2019, to support these claims.  *See* ECF No. 31 at ¶¶ 26–28 and 31 (July 2017 performance review; July 24, 2019 transfer; November 25, 2019 letter of reprimand; and December 5, 2019, denial of request for reimbursement).

While these more remote events may provide background for the Plaintiff's discrimination claims, they cannot provide the factual basis for these claims.  And so, the Court also DISMISSES the Plaintiff's Title VII claims based upon alleged discriminatory acts that occurred before December 25, 2019.

### D.    The Plaintiff May Amend Her Title VII Race And Section 1981 Claims

The Court is satisfied, however, that dismissal of the Plaintiff's Title VII race/color discrimination and Section 1981 claims is not warranted at this time, because the Plaintiff may be able to state plausible claims against the Defendants with further amendment of the amended complaint.  To state a race discrimination claim under Title VII, the Plaintiff must allege facts to show: (1) her membership in a protected class; (2) her satisfactory job performance; (3) that she experienced an adverse employment action; and (4) that she was treated differently than similarly situated employees outside the protected class.  *See Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).  To state a cause of action for a Section 1981 violation, the Plaintiff must show "both that the defendant intended to discriminate [against the plaintiff] on the basis of race, and that the discrimination interfered with a contractual interest."  *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006); *see, e.g.*, *Williams v. Staples,*

16

*Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).  And so, both claims require a showing that race was a motivating factor in the alleged discriminatory acts.

The Court is satisfied that the amended complaint contains sufficient factual allegations to satisfy the first two elements of the Plaintiff's Title VII race discrimination claim. There is no dispute that the Plaintiff is a member of a protected class under Title VII, because she identifies as African American (Black).  ECF No. 31 at ¶ 18.  The Plaintiff also alleges facts in the amended complaint to show that her job performance was satisfactory, because she alleges that she has been employed with Giant for more than 22 years and never received any discipline before November 25, 2019.  ECF No. 31 at ¶¶ 24 and 28.

The Court is also satisfied that the Plaintiff plausibly alleges that she experienced an adverse employment action while working for Giant.  Notably, the Plaintiff alleges, among other things, that:

- On December 16, 2022, Ms. Travers and Valree Stell told the Plaintiff that she would be reassigned to another Giant store that was much farther away from the Plaintiff's home.
- The Defendants denied Plaintiff mileage reimbursement for this reassignment.
- The Defendants denied the Plaintiff's request for a raise, bonus and a reasonable accommodation.

ECF No. 31 at ¶¶ 39, 40, 42 and 44.  The Fourth Circuit has held that "[a]n adverse employment action is one that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011).  While each of the aforementioned alleged adverse employment actions may not ultimately meet this requirement, the Court is satisfied that the Plaintiff has alleged sufficient facts to plausibly show an adverse employment action, with regards to her forced reassignments, lack of promotion and lack of reimbursement of work-related expenses, to survive a 12(b)(6) motion to dismiss.

But the Plaintiff's Title VII race discrimination and Section 1981 claims remain problematic, because, the Plaintiff fails to alleges sufficient facts to show that she was treated differently than similarly situated employees outside of her the protected class.  ECF No. 31; *see also* ECF No. 39-1 at 32.  Notably, the Plaintiff does not identify any comparators in the

amended complaint.   Rather, the Plaintiff generally alleges that non-Black, similarly situated Giant employees received more favorable treatment then she did, with regards to approval of reimbursement requests and mileage, performance bonuses and increased wages.  ECF No. 31 at ¶¶ 64, 75, 95,112–114, 123, 132, 135, 155, 167, 174, 176 and 191.

While the Plaintiff need not prove her race discrimination claims at the 12(b)(6) stage, she must at least identify a comparator to support this element of her discrimination claims to show that her race was the reason for the alleged discriminatory conduct in this case.  The Plaintiff argues in her response in opposition to the Defendant's motion to dismiss that she "is aware of the similarly situated co-worker's name." ECF No. 39-1 at 33. Given this, the Court will allow the Plaintiff to further amend the complaint to add this information.  And so, the Court DENIES the Defendant's motion to dismiss the Plaintiff's Title VII and Section 1981 race discriminations claims WITHOUT PREJUDICE.

### E.    The Plaintiff States A Plausible Hostile Work Environment Claim

The Court is also satisfied that the Plaintiff states a plausible hostile work environment claim in this case.  To state a hostile work environment claim, "a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintif's sex and/or race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011).  When determining if "an actionable hostile work environment claim exists," the Court must look at "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)).

Here, the Plaintiff alleges that she was subjected to discriminatory conduct by Ms. Travers from 2017 up to the date of the filing of this civil action in 2024. ECF No. 31 at ¶¶ 25–54.  The alleged pattern of discriminatory conduct by Ms. Travers includes, among other things, the following acts:

- On or about July 2017, Ms. Travers told the Plaintiff that the Plaintiff and her worksite would be given an earmarked performance score of 2 out of 5 possible performance points.

18

- On or about July 24, 2019, the Plaintiff was unexpectedly transferred to a Giant store located at 1280 East-West Hwy, Silver Spring, MD.

- On or about November 25, 2019, the Plaintiff was issued a Final Letter of Reprimand by Ms. Travers during a performance review meeting.

- On December 7, 2019, the Defendants denied the Plaintiff's request for reimbursement for her immunization certification training.

- On April 27, 2020, the Plaintiff received a phone call from Ms. Travers during which Ms. Travers berated and verbally abused her.

- On or about January 14, 2021, Ms. Travers told the Plaintiff to give all pharmacists a performance evaluation score of three, unless Ms. Travers tells her otherwise, while Ms. Travers refused to give the Plaintiff a performance evaluation score above two.

- Ms. Travers and Giant's Vice President of Human Resources, Valree Stell, came to her workplace for an unscheduled and unannounced meeting, during which the Plaintiff felt "threatened with a demotion by [Ms.]Travers."

- Ms. Travers denied the Plaintiff's request for a wage increase, mileage reimbursement, performance bonuses, or reasonable accommodation.

- On February 11, 2023, Ms. Travers required that the Plaintiff work on her day off and denied the Plaintiff a reasonable accommodation.

*Id.* at ¶¶ 26, 27, 28, 31, 32, 34, 39, 42 and 43.

While in isolation, each of these alleged acts may not be so severe and pervasive as to constitute a hostile work environment, the Plaintiff may be able to show that the cumulative effect of these events created such a work environment. Given this, the Court is not persuaded that the Plaintiff's hostile work environment claim in Count II of the amended complaint is implausible. And so, the Court declines to dismiss this claim. *Nat'l R.R. Passenger Corp.*, 536 U.S. at 116.

## F.    The Plaintiff States A Retaliation Claim

While a closer question, the Court also declines to dismiss the Plaintiff's retaliation claim in Count III of the amended complaint. To establish a *prima facie* case of retaliation, the

19

Plaintiff must show that: (1) she engaged in a protected activity, (2) the Defendants acted adversely against her, and (3) her protected activity was causally connected to the adverse action. *Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 789 (D. Md. 2013) (citing 42 U.S.C. § 2000e–3). The Plaintiff must also show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Herkert v. Kijakazi*, No. 1:22-CV-03139-LKG, 2024 WL 1050831, at *6 (D. Md. Mar. 11, 2024) (Griggsby, J.) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

As discussed above, the Plaintiff plausibly alleges several adverse employment actions in the amended complaint. The Plaintiff also argues she engaged in protected activity by submitting complaints internally with the Vice President of Pharmacy (HR) in late November/early December 2019, and externally with the EEOC on October 20, 2020. *See* ECF 39-1 at 39; *see also* ECF No. 31at ¶¶ 29–30, 89–90. But, the amended complaint also makes clear that some of the alleged adverse employment actions in this case occurred *before* the Plaintiff engaged in these protective activities. ECF No. 31. Give this, these earlier events cannot form the basis of the Plaintiff's retaliation claim.

There are, however, facts in the amended complaint to show alleged adverse employment acts that occurred after the Plaintiff filed her internal complaint and Charge of Discrimination that could support her retaliation claim. *See* ECF No. 31 at ¶¶ 31, 39, 42 and 43 (alleging denial of reimbursement; demotion threat and transfer to new store in Gaithersburg, MD; retaliation; denial of mileage reimbursement, denial of pay raise and denial of a reasonable accommodation). Given this, it is possible that the Plaintiff will be able to show the requisite nexus between her protective activity and these events. And so, the Court declines to dismiss the Plaintiff's retaliation claim in Count III of the amended complaint.[6]

### G.   The Plaintiff Fails To State Claims Under The EPA And Maryland Law

Turning to the Plaintiff's equal pay claims, a careful reading of the amended complaint shows that these claims are not plausible. "To prove a violation of the EPA, a plaintiff must

---

[6] While the standard for showing a materially adverse employment act is somewhat higher than the standard for the Plaintiff's Title discrimination claim, the Court is satisfied that the factual allegations in the amended complaint, taken as true, are sufficient to meet this standard.

make a *prima facie* showing of three elements: (1) the defendant-employer paid different wages to an employee of the opposite sex (2) for equal work on jobs requiring equal skill, effort, and responsibility, which jobs (3) all are performed under similar working conditions." *McDowell v. iCallidus, Inc.*, No. MJM-22-3172, 2024 WL 2816054, at *4 (D. Md. May 30, 2024) (internal citation omitted). The Equal Pay Act and Maryland Equal Pay for Equal Work Act are analyzed using the same framework. *Schrof*, 2023 WL 3763984, at *4.

The Court agrees with the Defendants that the Plaintiff's EPA and MEPEWA claims in Count VIII of the amended complaint are deficient, because she fails to identify a comparator to support these claims. Notably, the amended complaint lacks factual allegations to identify any comparators, or to show that such comparators performed equal work, under similar working conditions. *See* ECF No. 31, at ¶¶169–184. Given this, the amended complaint lacks sufficient facts to support the Plaintiff's pay claims. And so, the Court also DISMISSES the Plaintiff's EPA and MEPEWA claims in Count VIII of the amended complaint.[7]

### H.    The Court Declines To Grant The Plaintiff Leave To Further Amend The Amended Complaint

As a final matter, the Court declines to grant the Plaintiff leave to further amend the amended complaint, with the limited exception of permitting amendment to allow the Plaintiff to identify any comparators to support her race discrimination claims in Counts I and IV of the amended complaint. The decision of whether to grant or deny leave to amend is within the discretion of the Court, and the Court "should freely" grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). But, the Court should deny a party leave to amend "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (citing *Foman*, 371 U.S. at 182). In this regard, an amendment is futile "when the proposed amended complaint fails to state a claim." *Van Leer v. Bank Securities, Inc.*, 479 Fed. App'x 475, 479 (4th Cir. 2012).

---

[7] The Plaintiff acknowledges that she does not seek to bring any claims under the Workers' Compensation Act. ECF No. 39-1 at 19.

In this case, the Court has already afforded the Plaintiff the opportunity to correct the many deficiencies in the complaint, with the assistance of her counsel.  ECF Nos. 23 and 30.  But many of the deficiencies identified by the Defendants remain in the amended complaint. While the Plaintiff seeks leave to further amend the amended complaint, she largely fails to explain how the proposed amendment would cure these concerns.  ECF No. 39-1 at 47–49.

Given this, the proposed amendment would be futile.  And so, the Court declines to grant the Plaintiff leave to further amend the amended complaint, with the limited exception that the Plaintiff may amend the amended complaint to add any comparators to support her Title VII race/color and Section 1981 discrimination claims in Counts I and IV of the amended complaint.

## V.    CONCLUSION

For the foregoing reasons, the Court:

(1) **GRANTS-in-PART** and **DENIES-in-PART** the Defendants' motion to dismiss (ECF No. 34);

(2) **DISMISSES** the Title VII, ADEA, ADA and MFEPA claims against Defendant Travers;

(3) **DISMISSES** Counts V, VI, VII, VIII and IX of the amended complaint; and

(4) **GRANTS** the Plaintiff **LEAVE** to amend the amended complaint to add comparators to support her race/color discrimination claims in Counts I and IV of the amended complaint.

The Plaintiff shall **FILE** any amended complaint adding comparators to support her race/color discrimination claims in Counts I and IV of the amended complaint, and striking the claims dismissed by the Court, on or before **April 2, 2026.**

   **IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

22